## Lloyd *v.* Bull.

In the Court below,

THOMAS LLOYD, Jun. *Petitioner ;* MICHAEL BULL and THOMAS BULL, *Respondents.*

THIS was a petition in chancery, brought to the Superior Court, in February, 1799, the prayer of which was, that certain sums of money, which the petitioner had paid to the respondents, should be refunded, and that certain promissory notes, which he had executed to them, should be cancelled.

The facts, stated in the petition and answer, and found by the Court, are—That on the 20th of February, 1796, it was agreed between the petitioner and the respondents, that the latter should sell and convey to the former 150,000 twelve hundred thousandth parts of the Connecticut Western Reserve, at the price of $ 30,000 ; that the petitioner should pay to the respondents $ 3,000, on the 1st of January, 1797 ; that within six months, he should procure satisfactory security for the payment of $ 12,000, on the 2d of September, 1800, and the interest, annually, from the 2d of September, 1797 ; that he should pay the remaining sum of $ 15,000, on the 2d of November, 1800 ; that the respondents should hold the land, in their hands, for his benefit, until the last mentioned sum should be actually paid ; that they should, whenever partition should be made of the Western Reserve, in their own names, but for the sole use and benefit of the petitioner, draw for the said proportion of land, according to the mode pointed out, by the Connecticut Land

*Under an agreement between A. and B. for the purchase of 150,000 acres of Connecticut Western Reserve land, A. gives his notes, payable at different times then future, for the purchase money ; B. gives bonds to draw for the land with the Land Company, and to hold the tract drawn, and, at a specified time, if A. previously paid the notes, to convey the same to him ; A. pays a part of the money, but not the whole ; B. conveys the land to C. upon a contract, that C. should reconvey the same, before the time of drawing ; A. with notice of that conveyance, enters into a contract*
with C. the object of which is to save C. upon certain conditions, from the obligation of reconveying to B. C. though he fails to perform the conditions in his contract with A. neglects to reconvey to B. and *B. neglects to draw ;* held that A. is not entitled to relief in chancery against the notes.

1803.

LLOYD
v.
BULL.

Company ; that they should, at his request, convey the same to him, when said conditions should be performed ; and that he should pay all the taxes, which should be assessed thereon.

It was also stated and found, that on the 5th of May, 1796, the petitioner, in pursuance of his part of the agreement, executed his note to the respondents for $ 12,000, payable on the 2d of September, 1800, and three other notes for $ 720 each, for the interest, payable as the interest would become due, and procured *Oliver Phelps* Esq. who was approved of by the respondents, to guaranty the payments ; and that on the 1st of January, 1797, the petitioner paid to the respondents $ 3,000, and afterwards paid $ 350 for taxes, assessed on said land, which was placed to the credit thereof, in the books of said Land Company.

It also appeared, that on the 3d of October, 1797, the respondents, with *James Bull* as surety, executed three bonds, all of the same tenour, in the penal sum of $ 30,000 each, to the petitioner, binding the respondents, upon the petitioner's performing the agreement as before stated, on his part, to perform the same, on their part ; but that, before the execution of those bonds, they had, without the knowledge of the petitioner, transferred to *Ephraim Root*, *Jonathan Woodward*, and *John Bishop*, for the benefit of said *Bishop*, 12,640 twelve hundred thousandth parts of said Western Reserve, upon a contract between the respondents and *Bishop*, that he should, transfer to the respondents the same quantity of land, on or before the 26th of November, 1797,—or, in case the Land Company should make partition before that time, within ten days before such partition should be made, in order that the respondents might draw for 15,000 twelve

hundred thousandth parts of the Western Reserve, in pursuance of their contract with the petitioner.

It was also found by the Court, that on the 15th of February, 1798, the petitioner, well knowing that the respondents had made said transfer to *Bishop*, in order to save *Bishop* from the necessity and obligation of transferring said land to the respondents in pursuance of his contract with them, entered into a written contract with *Bishop*, in which it was stipulated, after counting upon the bonds executed by the respondents to the petitioner, and the notes executed by the petitioner to the respondents, that if *Bishop* should, on or before the 26th of May, 1798, discharge to the respondents, and exonerate the petitioner from $ 10,128, parcel of the note for $ 12,000, and $ 607 4, on each of the other three notes,—and *either* give the petitioner satisfactory security, on or before the 26th July, 1798, to pay to the petitioner $ 5,064, on the 2d of September, 1800, with interest annually from the 2d of September, 1797, until paid, *or* pay to the petitioner $ 2,532, on or before the 26th of July, 1798,— and pay to the petitioner, on or before the 26th of July, 1798, so much of the taxes, which the petitioner had paid, as is in the proportion of 12,660 to 15,000 ;—then *Bishop* should be entitled to receive and take benefit of the aforesaid three bonds, in the proportion of $ 12,660 to 2,340, and the petitioner would accordingly assign to *Bishop* such proportion thereof. *Bishop* then covenanted, on his part, that he would comply with and perform all the foregoing conditions ; *or*, would, on or before the 26th of July, 1798, pay to the petitioner $ 1,440, and convey to the respondents 12,660 twelve hundred thousandths of the undivided part of the Western Reserve, and also so much of the divided part, as is, upon an average of all the drafts, equal to 12,660 twelve hundred

1803.

LLYOD
v.
BULL.

thousandths thereof, *Ephraim Root* Esq. and *William Shepard*, jun. being the judges of such average. Appended to this contract there was a further agreement, to this effect : That if *Bishop* should cancel to the respondents the proportion before mentioned, on the four notes, (which would be $ 11,951) and should then choose to return the land, the petitioner would, upon *Bishop's* paying $ 79 more, make satisfactory security to the respondents, or to *Bishop*, for the sums so cancelled.

The Court further found, that partition of the Western Reserve lands was made on the 23d, 24th, and 25th of January, 1798 ; that the respondents having transferred 12,640 twelve hundred thousandths to *Bishop*, the remainder of the 15,000 twelve hundred thousandths only was drawn for, by the respondents ; that they had no other shares in said land, and by the books of the Company it appeared, that they had no right to make any other drafts in said partition ; that the petitioner did not make payment of the sum stipulated to be paid for said lands, and mentioned in the bonds, by the 2d of November, 1800, nor hath he since paid the same ; that *Bishop* did not perform his agreement with the petitioner ; and that the respondents, on the 1st of November, 1800, offered to convey to the petitioner 15,000 twelve hundred thousandth parts of the Western Reserve lands, on the petitioner's making to the respondents the payments, and performing the stipulations, on the part of the petitioner first to be performed, and still stand ready, and offer, to do the same.

The Court thereupon gave judgment, that the petitioner take nothing by his petition.

The general error was assigned.

*Edwards*, (of New-Haven) and *Terry*, for the plaintiff.

1. The petitioner is entitled to relief. The *Bulls*, by not drawing for the land, at the time of partition, have broken their contract, at law. As soon as the drawing had passed by, *Lloyd* might have brought his suits upon the bonds. There was a present breach, and he was entitled to an immediate remedy. (*a*) Further, the *Bulls* agreed to draw, and *hold in trust* for *Lloyd;* there was, therefore, a breach in not holding, and this a breach of trust, which affords a distinct ground of relief.

2. The remedy prayed for is the proper one. Adequate remedy can be had only in chancery. The contract was for the purchase of land. A party has a right to the specific thing contracted for ; but the *Bulls*, in this case, have disabled themselves to perform specifically. The contract, therefore, ought to be rescinded as to both parties. (*b*) It would be worse than futile, to compel *Lloyd* to pay the money on the notes, only that he might recover it back in a suit on the bonds.

*Goodrich*, (of Hartford) and *Dwight*, for the defendants.

1. If the petitioner has merits, he has complete remedy at law, as he holds three bonds, executed by the *Bulls*, amounting to $90,000, in which the whole contract between him and them is set forth, and which were taken, by him, for the very purpose of enforcing a perform-

(*a*) Co. Lit. Sect. 355, 6, 7, 8.  5 Co. 206, *Mayne's case.* 1 *Hen.*
Bl. 270. St. Albans v. Shere.

(*b*) 1 Fon. Eq. 141.  2 Ves. 528, *Chilliner v. Chilliner.*  2 P. Wms.
191, *Hobson v. Trevor.*  3 P. Wms. 188, *Hall v. Hardy.*  1 Br. C. C.
418, *Sloman v. Walter.*  10 Mod. 517, *Parkes v. Wilson.*  1 Pow. Con. 314.

Z

ance of that contract, on the part of the *Bulls.* The same acts or omissions, which are a breach of the contract, are also a breach of the bonds.

2. There has been no breach of the contract. No particular lands were specified by the parties. *Lloyd* contracted only for a certain proportion of the Western Reserve. The *Bulls* might buy lands to fulfil their agreement; and if, when the specified period arrived, they transferred, or offered to transfer, it was a substantial performance.

Further, the conduct of *Lloyd* shews clearly, that he did not consider either the transfer by the *Bulls* to *Bishop*, or their neglect to draw, as a breach of the contract. From the record it appears, that *Bishop* contracted with the *Bulls* to return the land, before the time of partition; that this was known to *Lloyd*; and that *Lloyd* afterwards entered into a contract with *Bishop*, the object of which was, *to save Bishop from the necessity, and obligation of returning the land.* That this was the motive, which induced the parties to make the contract, is evident, as well from the contract itself, as from the finding of the Court.

Again, *Lloyd* contracted with *Bishop* to sell him the benefit of his contract with the *Bulls*, so far as it respected the amount of land, which the *Bulls* had transferred to *Bishop*. (c) This implies, that *Lloyd's* contract with the *Bulls* was not discharged, by the failure to draw; for it was *three weeks after the partition.*

(c) The *Bulls* conveyed to *Bishop* 12,640 twelve hundred thousandths. *Lloyd* agreed to assign to *Bishop* such a proportion of the bonds as 12,660 bears to 2,340;—probably a mistake for 12,640 to 2,360, the 6 and the 4 in the tens' place of the two numbers being transposed.

Again, the contract was, that *Bishop* should exonerate *Lloyd* from a certain proportion of his payments to the *Bulls*. Now, if, by failing to draw, *Lloyd* was discharged from his contract, why does he contract with *Bishop* to take him off with the *Bulls?*

But, further, *Bishop* was to be discharged from his engagements in the contract, upon paying *Lloyd* $ 1,440 and returning to the *Bulls* the same quantity of land, which they had conveyed to him, on or before the 26th of July, 1798. *Lloyd* here authorized *Bishop*, for a premium, to reconvey *six months after the drawing.* He also fixed upon the quality of the land to be returned, and named referees to judge whether it was equal to the standard. Is not this, at least, an *implied agreement* not to take advantage of the failure to draw?

Further, in the subjoined clause to the contract, *Lloyd* expressly convenants, that, in case *Bishop* should, agreeably to one part of his agreement, cancel certain sums on *Lloyd's* notes to the *Bulls*, and then should choose to return the land, (by July, 1798) *Lloyd* would, upon *Bishop's* paying him $ 79 more, make satisfactory security, *either to the Bulls*, or to Bishop, for the sums so cancelled.

Finally, *Lloyd* may now sue *Bishop* on the covenants in the contract. If he should, *Bishop* may compel *Lloyd* to convey. If so, how can the Court rescind the contract between *Lloyd* and the *Bulls?*

The *Counsel* for the plaintiff, in reply, urged, that the *Bulls* could not avail themselves of the contract between *Lloyd* and *Bishop*. They were neither privies nor parties to it.

1803.

LLOYD
T.
BULL.

Again, the contract with *Bishop* was made after the *Bulls* had disabled themselves to perform. *Lloyd's* equity had attached. If available in any way, it must, then, be, as a release of the right action. If it was a release, the *Bulls*, being strangers to it, could not take advantage of it.

The offer to convey, made by the *Bulls*, in November, 1800, was long after the date of the petition. Besides, they could not convey the *same* land, which they had agreed to convey; for they had not drawn. Nor does it appear, that they had any title. The offer to convey, was, therefore, a day too soon.

BY THE COURT, HILLHOUSE, *Ast*. dissenting,

The judgment was affirmed.

## Griswold *v.* Brown.

In the Court below,

FRIEND GRISWOLD, Administrator of *Nathaniel Griswold*, deceased, *Plaintiff;* PETER BROWN and PHILANDER MOORE, *Defendants.*

Action of trespass, for entering upon the lands, and burning the mills of the intestate, in his life-time, survives to the administrator.

NATHANIEL GRISWOLD brought an action of trespass, against *Brown* and *Moore*, for entering the plaintiff's close, and burning his mills. This suit was prosecuted to final judgment, before the Superior Court, and a verdict obtained against both the defendants. *Brown* and *Moore* then brought a petition for a new trial, during the pendency of which, the defendant therein, and plaintiff in the original action, died; and a citation issued to *Friend Griswold*, his administrator, to appear and defend. The administrator appeared, and pleaded